IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DOBSON BROTHERS CONSTRUCTION,   )
Company, a Nebraska             )
corporation,                    )
                                )
              Plaintiff,        )        4:08CV3103
                                )
       v.                       )
                                )
RATLIFF, Inc., an Oklahoma      )        REPORT AND RECOMMENDATION
corporation, and AMERICAN       )
CONTRACTORS INDEMNITY,          )
Company, a California           )
corporation,                    )
                                )
              Defendants.       )
                                )

Pending before me for a report and recommendation is the motion to compel arbitration filed by the defendant and counter claimant, Ratliff, Inc. ("Ratliff").  Filing No. 33.  The parties have briefed the issue, and have filed supplemental briefs pursuant to the memorandum and order entered by the undersigned on September 11, 2008.  Filing No. 50.  The matter is now fully submitted.  For the following reasons, I recommend that the motion be granted.

STATEMENT OF FACTS

The Plaintiff, Dobson Brothers Construction Company ("Dobson") filed a breach of contract action against Ratliff and its surety, American Contractors Indemnity, Company ("ACIC"), to recover damages for Ratliff's alleged breach of a construction subcontract.  Filing No. 24-1.  Ratliff filed a counterclaim to recover amounts allegedly owed by Dobson for Ratliff's performance of the subcontract.  Filing No. 31.

On or about April 10, 2007, Dobson entered into a written contract with the Oklahoma Department of Transportation (the "Prime Contract") wherein Dobson agreed to perform highway construction on Highway 183 in Washita County, Oklahoma (the "project"). Filing No. 24-1, ¶ 5; filing no. 35-3. Under the terms of the contract, Dobson agreed to substantially complete the highway construction project in 270 days. The contract further stated Dobson would earn $10,000 per day for early performance, and would lose $10,000 per day for late performance of the contract. Filing No. 24-1, ¶¶ 5, 12; filing no. 35-3, at CM/ECF p. 5.

On May 22, 2007, Dobson subcontracted with Ratliff to furnish all of the materials, equipment, labor and incidentals and perform all the work required for installing the sanitary sewer service line and the water line for the project. Filing No. 24-1, ¶ 6; filing no. 1-2. The Dobson/Ratliff subcontract stated that Ratliff was required to start its work on the contract upon one week's notice and complete the subcontract work in accordance with Dobson's construction schedule and the terms of the prime contract. Dobson agreed to pay Ratliff $620,000 for installing the water line, and $236.61 per linear foot for installing the sanitary sewer line in a timely and satisfactory manner. Filing No. 24-1, ¶ 10. ACIC provided the bond securing Ratliff's performance of the subcontract work. Filing No. 24-1, ¶¶ 8-11.

Ratliff began work on the project on August 1, 2007. However, on September 28, 2007, Dobson notified Ratliff that Ratliff's work presented safety concerns, and was deficient, unsatisfactory, and not in compliance with the subcontract. Dobson alleges it provided additional notices to Ratliff and its

2

surety, ACIC, stating Ratliff's work remained unacceptable and
untimely, and was hindering Dobson's timely performance of the
prime contract, but Ratliff and ACIC failed to respond and cure
the deficiencies.  Dobson alleges that due to the lack of
response by Ratliff and ACIC, Dobson was required to use its own
employees and resources to perform the subcontract work in an
effort to timely complete the project.  Filing No. 24-1, ¶¶ 13-
20.  Dobson alleges it ultimately exercised its right to
terminate the subcontract due to Ratliff's default.  Filing No.
24-1, ¶ 21.  See also filing no. 24-2, at CM/ECF p. 3.

Dobson claims that as a result of Ratliff's breach of the
subcontract, Dobson incurred expenditures for labor, materials,
and equipment to perform the subcontract, was assessed
disincentive charges by ODOT for late performance of the prime
contract, and lost incentive payments it would have earned but
for Ratliff's untimely and deficient performance of the
subcontract.  Filing No. 24-1, ¶¶ 22-23.  Dobson seeks
compensatory damages from Ratliff and its surety, ACIC.

Ratliff has filed a counterclaim against Dobson, alleging
that during performance of the construction work, Dobson
increased the scope of the work Ratliff was to perform and agreed
to accordingly extend Ratliff's performance deadlines.  Ratliff
claims it performed the duties owed under the subcontract, but
Dobson has failed to pay Ratliff for the labor and materials it
provided.  Filing No. 31.

Ratliff's answer to Dobson's complaint alleges "Ratliff and
plaintiff are bound by a mandatory alternative dispute resolution
agreement to resolve this dispute through binding alternative
dispute resolution," (filing no. 30, ¶ 4), as "more fully set

forth in the Prime Contract."  Filing No. 30, affirmative
defenses ¶ 1.  Section 1.1 of the subcontract states:

> The contract between Contractor and Owner is
> hereinafter referred to as the "Prime Contract".  A
> copy of the prime Contract, consisting of the
> agreement between the Owner and Contractor and other
> contract documents including drawings, specifications,
> general conditions, special conditions or work and
> other documents, has been made available to the
> Subcontractor and by this reference is made a part of
> this Subcontract.  Subcontractor acknowledges review of
> all such documents relevant to Subcontractor's scope of
> work and the Subcontractor agrees to be bound to the
> Contractor and the Owner by the terms and provisions
> thereof.

Filing 35-49, at CM/ECF p. 2.

The prime contract incorporates the requirements of the
Oklahoma Department of Transportation Standard Specifications for
Highway Construction, as well as any Special Specifications and
Special Provisions attached to the contract.  Filing No. 35-3, at
CM/ECF p. 3.  Standard Provision 109.11 of the 1999 Standard
Specifications for Highway Construction, ("Standard Provision
109.11") stated:

> All disputes between Contractors and subcontractors
> relating to payment for completed work or retainage
> shall be referred to a dispute resolution service, such
> as American Arbitration Association (AAA) for
> resolution through binding arbitration.

Filing No. 48-4.

However, Standard Provision 109.11 was replaced by the
alternative dispute resolution language within Special Provision

4

"109.11.   PAYMENTS TO SUBCONTRACTORS" ("Special Provision
109.11") in the prime contract.   Special Provision 109.11 states:

> Payment disputes between the Contractor and
> subcontractors relating to allocation of chargeable
> contract time and any resultant liquidated damages,
> quantity or quality of items of work subject to a
> subcontract or other agreement shall be referred to a
> neutral alternative dispute resolution forum for hearing
> and decision with the costs for such mediation or
> arbitration to be shared equally by the parties.
> Funding for mediation of payment disputes involving
> Disadvantaged Business Enterprises is available from the
> Department through the DBE Supportive Service Program.
> Such services are reimbursed by the Federal Highway
> Administration and are authorized by 23 CFR §§ 230,
> Subpart B.  The Contractor shall include a clause in any
> subcontract notifying the subcontractor of their right
> to resolution of payment disputes through alternative
> dispute resolution mechanisms.

Filing 35-12, at CM/ECF p. 3.  Dobson did not include any clause
in the subcontract specifically notifying Ratliff of its right to
demand alternative dispute mechanisms for resolution of payment
disputes.  Standard Provision 107.10 of the 1999 Standard
Specifications for Highway Construction, ("Standard Provision
107.10"), incorporated by reference into the prime contract,
states:

> It is specifically agreed between the parties executing
> this Contract that it is not intended by the Contract
> provisions to create [in the] public or any member
> thereof a third party beneficiary hereunder.

Filing No. 48-3.

DISCUSSION

Ratliff moves for an order compelling arbitration and staying this litigation pending the final decision of an arbitrator.  Ratliff argues that Dobson entered into a binding written agreement to refer all payment disputes with Ratliff related to the quality or quantity of Ratliff's work, the allocation of Ratliff's contract time, and claims for liquidated damages to a neutral alternative dispute resolution forum for a hearing and binding determination.  Filing No. 34, at CM/ECF p. 5.  Dobson argues that the motion to compel arbitration must be denied because neither the subcontract nor the prime contract contain an express agreement to refer disputes to binding arbitration, Ratliff cannot unilaterally demand arbitration as the alternative dispute resolution mechanism employed, and Ratliff is a third party to the prime contract and cannot assert any rights under that contract.  Filing 47, at CM/ECF p. 1; filing no. 54.

Ratliff seeks referral to binding arbitration; Dobson argues there is no legal basis for ordering the parties to engage in alternative dispute resolution, including mediation, non-binding arbitration, or binding arbitration.  Neither party moves the court for an order referring their dispute to non-binding arbitration or mediation.

    A.    Ratliff's Right to Enforce the ADR Provision Set Forth
          in the Prime Contract.

Contrary to the specific language of the prime contract, (filing no. 35-12, at CM/ECF p. 3), Dobson did not include any language in the subcontract advising Ratliff of its right to submit payment disputes to ADR.  Filing 35-12, at CM/ECF p. 3.

6

Therefore, any rights Ratliff may have to compel binding
arbitration are derived from the language of Special Provision
109.11 set forth in the prime contract.  Dobson claims Ratliff
was not a party to the prime contract and as a mere third party
beneficiary, cannot enforce the prime contract's ADR provision.
Ratliff claims that since the prime contract was incorporated by
reference into the subcontract, the prime contract's ADR
provision is deemed included within the subcontract.

Oklahoma law governs claims under the prime contract, (see
filing no. 47, p. 8, n. 2), and by its specific terms, Nebraska
law governs interpretation and enforcement of the subcontract,
(filing no. 35-49, at CM/ECF p. 5).  However, under either
state's law, when a contract incorporates another contract by
direct reference or by necessary implication, the two instruments
are interpreted as a single contract.  McCord & Burns Law Firm,
LLP v. Piuze, 276 Neb. 163, 171, 752 N.W.2d 580, 586 (2008);
Nowak v. Burke Energy Corp., 227 Neb. 463, 468, 418 N.W.2d 236,
240 (1988); Fireman's Fund Ins. Co. v. Overton, 491 P.2d 278, 281
(Okla. 1971)(citing Continental Supply Co. v. Levy, 121 Okl. 132,
247 P. 967 (1926)("[W]here a contract refers to and makes the
conditions of another instrument . . . a part of it, the two will
be construed together as the agreement of the parties.").

Under the specific language of the Dobson/Ratliff
subcontract, the prime contract was "made a part of" the
subcontract.  Filing No. 35-49, at CM/ECF p. 2.  Accordingly, the
ADR provision of the prime contract became part of the
subcontract.  See e.g., JS & H Const. Co. v. Richmond County
Hospital Authority, 473 F.2d 212, 214 (5th Cir. 1973)(holding
that a prime contract's arbitration clause became part of the
subcontract by incorporation of the prime contract); Starr Elec.

7

Co., Inc. v. Basic Const. Co., 586 F. Supp. 964 (D.C.N.C. 1982)(holding arbitration clause in the prime contract was enforceable by subcontractor where the prime contract was incorporated into the subcontract by reference); 6 Bruner & O'Connor, Construction Law, § 20:32 (extensively citing cases supporting the broad consensus that general incorporation language in a construction subcontract is sufficient to incorporate the arbitration provisions of a prime contract). Therefore, although the ADR clause Ratliff seeks to enforce is written in the prime contract, the clause is enforceable by Ratliff as a party to the subcontract.  Ratliff is not asserting rights to ADR as a mere third party beneficiary of the prime contract.

Moreover, as Dobson's brief states, "[u]nder both Oklahoma and Nebraska law, for unnamed parties to a contract to enforce contract rights as a third-party beneficiary, it must clearly appear that the third-party's rights were considered and made a part of the contract."  Filing No. 47, at CM/ECF p. 13 (citing e.g., Molina v. Am. Alternative Ins. Corp., 270 Neb 218, 699 N.W.2d 415, 419 (2005) and Copeland v. Admiral Pest Control Co., 933 P.2d 937,939 (Okla. Civ. App. 1996)).  Special Provision 109.11 outlines how payment disputes between the subcontractor and contractor must be resolved and specifically states Dobson was required to include language in its subcontracts advising subcontractors of their right to pursue ADR.  The language of Special Provision 109.11 establishes that ODOT and Dobson contemplated and considered the rights and interests of subcontractors when they executed the prime contract, and the ADR provision of the prime contract was adopted for the benefit of not only Dobson, but its subcontractors.  As to the controversy at issue in this litigation, Ratliff is not asserting rights as a

8

general member of the public, (see Standard Provision 107.10, filing no. 48-3), but as the specifically anticipated recipient of the right to enforce ADR under Special Provision 109.11 of the prime contract.

Accordingly, Dobson's claim that "Ratliff has no right or standing to enforce any arbitration rights under the Prime Contract," (filing no. 47, at CM/ECF p. 14), should be denied.

B.   Enforcement of Special Provision 109.11 under the Federal Arbitration Act.

Ratliff has moved to compel arbitration under the Federal Arbitration Act, ("FAA"). See 9 U.S.C. § 2. The FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Congress clearly intended "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," (Moses H. Cone Memorial Hops. V. Mercury Const. Corp., 460 U.S. 1, 22 (1983)), and to effectuate this purpose, it specifically authorized enforcement of arbitration agreements through court orders to stay litigation, (9 U.S.C. § 3), and require the parties to engage in the arbitration process, (9 U.S.C. § 4). Id.

When an arbitration agreement exists, "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

> Congress provided a limited role for courts, allowing them to "consider only issues relating to the making and performance of the agreement to arbitrate." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). These issues are presumptively committed to judicial determination, because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

Koch v. Compucredit Corp., 2008 WL 4305903, 2 (8th Cir., Sept. 23, 2008).

When a party files a motion to stay litigation and compel arbitration, the court must decide:  1) whether a valid arbitration agreement exists between the parties, and 2) if so, whether the subject matter of the dispute falls within the scope of the arbitration clause.  Koch, 2008 WL 4305903, at *2. Ratliff and Dobson do not argue that the issues of their dispute are not within the scope of the ADR requirements of Special Provision 109.11.  Rather, Dobson argues that it did not agree to arbitrate any disputes that may arise with Ratliff, and never agreed to mandatory arbitration as the sole means of resolving any disputes with any party, including Ratliff.  Dobson argues that an agreement that "provides some form of arbitration as one of many alternative dispute resolution mechanisms that may be

chosen does not constitute an agreement to arbitrate under the FAA." Filing 47, at CM/ECF p. 8.

Special Provision 109.11 specifically states that payment disputes between Dobson and its subcontractors, including Ratliff, "shall be referred to a neutral alternative dispute resolution forum for hearing and decision with the costs for such mediation or arbitration to be shared equally by the parties." Filing 35-12, at CM/ECF p. 3. Dobson agreed to the terms of Special Provision 109.11 when it entered into the prime contract with ODOT, and it cannot reasonably argue that it was unaware of this contract provision. Its claim that it never agreed to arbitrate any dispute with Ratliff rests, in part, on the fact that with respect to claims between Dobson and Ratliff, "arbitrate" or "arbitration" is never mentioned in the Dobson/Ratliff subcontract. As previously explained, the prime contract's Special Provision 109.11, though not specifically set forth in the language of the subcontract itself, was made a part thereof by incorporating the prime contract, by reference, into the subcontract. As such, the subcontract includes Special Provision 109.11 which does specifically mention "arbitration" as an available means to alternative dispute resolution.

Dobson further argues that "arbitration," as set forth in Special Provision 109.11, actually means traditional mediation and not binding arbitration. In support of this interpretation, Dobson argues that ODOT adopted Special Provision 109.11 to replace Standard Provision 109.11, which required binding arbitration for resolution of contractor/subcontractor disputes, thereby evidencing ODOT's intent to eliminate binding arbitration as a dispute resolution option. Dobson argues:

> The fact that ODOT clearly knew how to draft a binding arbitration agreement that would result in a binding decision by a neutral third-party, but chose to replace such a provision with a traditional mediation alternative, is compelling evidence that the new ADR Provision contained in the Prime Contract's Special Provisions is not an enforceable arbitration agreement within the meaning of the FAA.

Filing 47, at CM/ECF pp. 10-11.  I disagree.

The contract at issue is for ODOT's construction/repair of a highway with the use of federal funds.  In 1982, Congress enacted legislation to distribute federal highway construction and transit funds, and the opportunities created by those funds, in a manner that does not reflect or reinforce prior and existing patterns of discrimination in the highway construction industry. City of Richmond v. J.A. Croson Co., 488 U.S. 469, 504 (1989). Pursuant to 15 U.S.C. § 637, and its implementing regulations, ten percent of federal highway construction funds must be paid to small businesses owned and controlled by "socially and economically disadvantaged individuals," as that term is defined in § 8(d) of the Small Business Act.  Sherbrooke Turf, Inc. v. Minnesota Dept. of Transp., 345 F.3d 964, 967 (8th Cir. 2003). The federal DOT adopted regulations to implement 15 U.S.C. § 637, but the constitutionality of these regulations as they existed in 1999 was placed in doubt by the Supreme Court's decision in Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 211-12 (1995).

Accordingly, in 1999, the federal DOT promulgated new implementing regulations, referred to as the revised Disadvantaged Business Enterprise ("DBE") program.  See 49 C.F.R. §§ 26.21 et. seq.  Pursuant to the revised DBE program, any entity, including the ODOT, which accepts bids for federally

12

funded highway construction must have its own DBE program.  49
C.F.R. § 26.21.

As required under 49 U.S.C. § 26.29, ODOT's DBE program was
required to include provisions for ensuring prompt payment of
subcontractors on federally-funded highway projects.  For
example, a state DBE program must require that prime contracts
include a clause requiring contractors to pay subcontractors
within 30 days of satisfactory performance of the contract, (49
U.S.C. § 26.29(a)), and special provisions for prompt and full
payment of retainage.  In addition, 49 U.S.C. § 26.29(e) states:

> (e)  You may also establish, as part of your DBE
> program, any of the following additional mechanisms to
> ensure prompt payment:
>
> > (1) A contract clause that requires prime
> > contractors to include in their subcontracts
> > language providing that prime contractors and
> > subcontractors will use appropriate
> > *alternative dispute resolution mechanisms* to
> > resolve *payment disputes*.  You may specify
> > the nature of such mechanisms.

49 C.F.R. § 26.29(e)(emphasis added).

Upon review of the "prompt payment" requirements of 49
C.F.R. § 26.29, it is clear that "Special Provision 109.11.
PAYMENTS TO SUBCONTRACTORS" parallels and was drafted in
accordance with ODOT's mandated DBE program.  Special Provision
109.11 closely tracks the language of 49 C.F.R. § 26.29 in
outlining the prompt payment requirements owed by Dobson to its
subcontractors.  Using the specific phrasing of 49 C.F.R. §
26.29(e), Special Provision 109.11 further includes a requirement
that "payment disputes" between the contractor and subcontractor

13

be referred to "alternative dispute resolution" for resolution.
When considered in the context of the regulatory changes made
after 1999, the court cannot accept Dobson's argument that ODOT's
act of replacing the "arbitration clause" wording of Standard
Provision 109.11 with the "alternative dispute resolution"
phrasing of Special Provision 109.11 necessarily evidences ODOT's
intent to eliminate arbitration and replace it with traditional
mediation as the means for resolving contractor/subcontractor
disputes.

49 C.F.R. § 26.29 afforded states the authority to require
ADR for "resolution" of contractor/subcontractor payment
disputes, and to delineate the acceptable ADR mechanisms.  At
most, the language of Special Provision 109.11 indicates ODOT's
intent to supplement the available ADR options, not supplant
arbitration as one of those options.

Dobson nonetheless argues that the arbitration contemplated
under Special Provision 109.11 is non-binding arbitration, and
therefore Ratliff's motion to refer this case to binding
arbitration must be denied.  Citing Dow Corning Corp. v. Safety
National Cas. Corp., 335 F.3d 742 (8th Cir. 2003), Dobson argues
that absent any language in an ADR provision specifically stating
that the arbitration is "binding" or will result in a "final"
decision, the contracting parties have not agreed to binding
arbitration.  Ratliff argues that Special Provision 109.11
requires the parties to submit disputes to ADR for "hearing and
decision," and as such, is an agreement to engage in binding
arbitration that must be enforced under the FAA.  Filing No. 49,
pp. 3-4.  See e.g., Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d
1205, 1208 (9th Cir. 1998)(holding "[n]o magic words such as
"arbitrate" or "binding arbitration" or "final dispute

14

resolution" are needed to obtain the benefits of the Act")(quoting AMF Inc. v. Brunswick Corp., 621 F.Supp. 456 (E.D.N.Y. 1985)).

Arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Technologies v. Communications Workers, 475 U.S. 643, 648 (1986). The Eighth Circuit has held:

> Parties intending binding arbitration *should* say so explicitly in the agreement to arbitrate, either by providing that the arbitration award will be "final and binding," or words to that effect, or by incorporating by reference the rules of the American Arbitration Association or a similar arbitral body that expressly provide for binding arbitration.

Dow Corning Corp., 335 F.3d at 745 (emphasis added). However, Dow Corning did not hold that in the absence of "final and binding" phraseology, the court must assume an arbitration clause refers to only non-binding arbitration. See also, PVI, Inc. v. Ratiopharm GmbH, 135 F.3d 1252, 1254 (8th Cir. 1998)(holding the mere inclusion of the phrase "final and binding" in an agreement to arbitrate does not necessarily make the award enforceable under the FAA).

As reflected in Dow Corning, the critical question is whether the parties intended the arbitration to be binding. Accordingly, although the Dow Corning clause lacked any wording that the arbitrators' decision was "final" and "binding," the court nonetheless considered the parties' intent before deciding that an arbitration agreement required only non-binding arbitration. The clause in Dow Corning stated arbitration was a "condition precedent" to litigation and required referral of disputes to an arbitration board composed of officials from the

15

insurance and reinsurance industries.  The court held that under this contract language, the arbitration forum had a decidedly pro-insurer tilt, and the clause appeared to be designed to resolve technical disputes between an insurer and reinsurer, and not those arising between the insurer and insured.  It therefore found that the insurer and insured did not intend to enter into a binding arbitration agreement, and the clause required non-binding rather than binding arbitration as a condition precedent to filing a lawsuit.

Unlike the clause in Dow Corning, Special Provision 109.11 requires referral to a "neutral" ADR forum for a hearing and decision.  Although the clause does not state the resulting arbitrator decision is "binding" or "final," courts generally apply basic contract law principles in determining the existence, validity, and meaning of an arbitration clause. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 476 (1989)(affirming use of contract's choice-of-law provision in determining that the parties intended the California rules of arbitration to apply to their arbitration agreement); Stark v. Sandberg, Phoenix & von Gontard, P.C., 381 F.3d 793, 801 (8th Cir. 2004)("[S]tate contract law governs whether an arbitration agreement is ambiguous."); Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 946 (8th Cir. 2001)("State contract law governs whether an arbitration agreement is valid.").  When applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement under the FAA, due regard must be given to the federal policy favoring arbitration. Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 475-476 (1989).

16

Oklahoma law, which governs the interpretation and enforcement of the prime contract between ODOT and Dobson, defines "arbitration" as the "referral of a dispute by the voluntary agreement of the parties to one or more impartial arbitrators for a final and binding decision as a determination of their dispute." Ditto v. RE/MAX Preferred Properties, Inc., 861 P.2d 1000, 1002 (Okl. App. 1993).[1]  Likewise, "arbitration" is defined in Blacks Law Dictionary as "[a] method of dispute resolution involving one or more neutral third parties who are usually agreed to by the disputing parties and whose decision is binding-- Also termed (redundantly) binding arbitration." Black's Law Dictionary (8th ed. 2004), at p. 85.  "Arbitration is the reference of a particular dispute to an impartial third person chosen by the parties to a dispute who agree, in advance, to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard." General Motors Corp. v. Pamela Equities Corp., 146 F.3d 242, 246 (5th Cir. 1998).  The essence of arbitration is that "when the parties agree to submit their disputes to it, they have agreed to arbitrate these disputes through to completion, i.e. to an award made by a third-party arbitrator. Harrison v. Nissan Motor Corp in U.S.A., 111 F.3d 343, 350 (3d Cir. 1997).

> [T]he "common incidents" of "classic arbitration,"
> includ[e] (i) an independent adjudicator, (ii) who
> applies substantive legal standards ( i.e. the parties'
> agreement and background contract law), (iii) considers

---

[1]The court acknowledges that Ratliff has not asked the court to enforce Special Provision 109.11 under Oklahoma's Uniform Arbitration Act.  See 12 Okl. St. Ann. § 1863 et. seq. (effective January 1, 2006).  However, "[e]xtant applicable law is a part of every contract in [Oklahoma] as if it were expressly cited or its terms incorporated in the contract."  See e.g., Public Service Co. of Oklahoma v. State ex rel. Oklahoma Corp. Com'n, 115 P.3d 861, 884 (Okla. 2005).

evidence and argument (however formally or informally)
from each party, and (iv) renders a decision that
purports to resolve the rights and duties of the
parties, typically by awarding damages or equitable
relief.

Advanced Bodycare Solutions, LLC v. Thione Intern., Inc., 524
F.3d 1235, 1239 (11th Cir. 2008).


Based on the generally accepted description and definition
of "arbitration," which is consistent with the definition set
forth in Oklahoma case law, in the absence of language,
circumstances, or evidence indicating the parties' intent to
agree to non-binding arbitration, (such as referral to a non-
neutral arbitration forum or language indicating the arbitration
will be non-binding), an agreement to submit disputes to a
neutral forum for "hearing and decision" by "arbitration" refers
to a binding arbitration process.  See e.g., McDonnell Douglas
Finance Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825,
830 (2d Cir. 1988)(holding an arbitration agreement existed where
the language failed to state the process was "final" or
"binding," yet clearly manifested the parties' intent to submit
certain disputes to a specified third party for a decision).

I find that the "arbitration" process of Special Provision
109.11 is binding arbitration.[2]

---

[2]Even assuming the clause requires "non-binding
arbitration," a clause requiring non-binding arbitration is
nonetheless enforceable under the FAA.  "Binding arbitration is
no doubt the norm under the FAA, but no express language limits
the statute to binding arbitration agreements."  Dow Corning, 335
F.3d at 747-748.  Dow Corning held that the FAA authorizes
judicial review of arbitration decisions arising from non-binding
arbitration proceedings conducted as a condition precedent to
litigation, specifically noting that "[o]ther circuits have held
that the FAA applies to at least some agreements to engage in

Dobson argues that this case cannot be stayed and arbitration compelled under he FAA because Special Provision 109.11 does not require arbitration; contractors and subcontractors can choose to mediate rather than arbitrate. I disagree.

First, read as a whole, Special Provision 109.11 mandates ADR, and states the parties must submit their dispute to a neutral mediator or arbitrator for a hearing and decision. Even if described in the clause or by the parties as "mediation," resolution of a dispute by referral to a neutral third party for a hearing and decision is arbitration. Ditto, 861 P.2d 1000, 1001 n. 1 ("Although the clause refers to "mediation," the process is clearly binding on both parties, and is therefore indistinguishable from, and may be treated as, an agreement to

---

mandatory, non-binding arbitration." Dow Corning, 335 F.3d at 747 (relying on United States v. Bankers Ins. Co., 245 F.3d 315, 322 (4th Cir. 2001); Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1207-09 (9th Cir. 1998); Harrison v. Nissan Motor Corp., 111 F.3d 343, 349-50 (3d Cir. 1997)). See also, Kelley v. Benchmark Homes, Inc., 250 Neb. 367, 550 N.W.2d 640 (1996), disapproved on other grounds, State ex rel. Bruning v. R.J. Reynolds Tobacco Co., 746 N.W.2d 672, 679, 275 Neb. 310, 319 (Neb. Mar 28, 2008))(FAA applies to nonbinding arbitration).

The Eighth Circuit "will not interpret an arbitration agreement as precluding the application of the FAA unless the parties' intent that the agreement be so construed is abundantly clear." Dow Corning, 335 F.3d at 748. Accordingly, even assuming the arbitration referred to in Special Provision 109.11 is non-binding arbitration, if such arbitration is contractually required, the court must enter an order staying this litigation pending the parties' completion of non-binding arbitration. See also, De Valk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326, 335-37 (7th Cir. 1987)(holding plaintiff's failure to mediate under provision requiring mediation as a condition precedent to pursuit of other remedies resulted in a grant of summary judgment to defendants).

arbitrate disputes.")(citing McDonnell Douglas Finance Corp., 858 F.2d at 830). Whether couched in terms of "mediation" or "arbitration," a clause that mandates use of a neutral non-judicial forum for conducting a hearing and issuing a decision to resolve or settle the parties' dispute is enforceable under the FAA. See also, Fisher v. GE Medical Systems 276 F. Supp. 2d 891 (M.D. Tenn. 2003)(holding an agreement to mediate claims in an issue resolution process involving an outside mediator is an agreement to "arbitrate" covered by the FAA); CB Richard Ellis, Inc. v. American Environmental Waste Management 1998 WL 903495, 2 (E.D.N.Y. 1998)(holding a mediation clause that manifested the parties' intent to provide an alternative method to "settle" controversies fits within the FAA's definition of arbitration); AMF, Inc. v. Brunswick Corp., 621 F.Supp. 456 (E.D.N.Y.1985) (holding the essence of arbitration is that third parties decide disputes; arbitration need not include an adversary proceeding, submission of evidence, witnesses and cross-examination).

Second, even assuming Special Provision 109.11 allows the parties to choose between arbitration (which generally includes a hearing and a decision rendered by a third party), and traditional mediation (where the parties decide how to resolve the dispute with a third party's assistance but without an adversary hearing), this choice does not make the clause unenforceable under the FAA. Dobson argues to the contrary, citing Advanced Bodycare Solutions,LLC v. Thione Int'l, Inc., 524 F.3d 1235 (11th Cir. 2008). Dobson claims "[a]n agreement that provides some form of arbitration as one of many alternative dispute resolution mechanisms that may be chosen does not constitute an agreement to arbitrate under the FAA," (filing no. 47, p. 9), and if parties can fulfill their pre-suit duties under the contract without undertaking arbitration, they did not enter

20

into an arbitration agreement enforceable under the FAA.   Filing
No. 47, p. 9.

      The contract in Thione stated that disputes must be
submitted to "mediation or non-binding arbitration" prior to
filing a lawsuit.   Thione found that mediation is not arbitration
and cannot be compelled under the FAA, but non-binding
arbitration was within the scope of FAA enforcement.   Thione
concluded that since the parties were permitted to choose an ADR
option that was not governed by the FAA, they were not required
to resolve their dispute through an arbitration process
enforceable under the FAA.   The existence of a non-FAA ADR choice
rendered the clause unenforceable under the FAA.   Thione
explained:

            This is merely an application of the principle that
            arbitration is a creature of contract; a party may not
            be compelled to arbitrate if he did not agree to do so.
            . . .   When an aggrieved party may satisfy his
            contractual duties under a dispute resolution clause
            without undertaking arbitration, he has not obligated
            himself to settle the dispute by arbitration.   So if
            either procedure specified in this contract is not
            "arbitration" under the FAA, [arbitration cannot be
            compelled under the FAA].

Thione, 524 F.3d at 1240.

      The Eleventh Circuit's decision in Thione is difficult to
square with the Eighth Circuit's reasoning and holding in
American Italian Pasta Co. v. Austin Co., 914 F.2d 1103, 1105
(8th Cir. 1990).   In American Italian, the parties had entered
into a construction contract which stated that if a dispute arose
between the contractor and owner, they would attempt to settle it
before filing suit, and if they both agreed the dispute could not
be settled, "then such dispute or disagreement *may* be submitted

21

to arbitration in accordance with the Rules of The American
Arbitration Association in which event, the decision of the
arbitrators shall be final and binding upon the parties."
American Italian, 914 F.2d at 1104 (emphasis added).  A dispute
arose that could not be settled, and the construction company
notified the American Arbitration Association to proceed with
arbitration.  The owner moved to stay the arbitration, arguing
that since the contract between the parties permitted but did not
compel participation in arbitration, the agreement was not
enforceable under the FAA.

        The trial court held that "permissive arbitration" at the
request of only one party to the dispute was not enforceable
under the FAA.  The Eighth Circuit reversed.  American Pasta held
that in order to give effect to all of the contract provisions
and to avoid rendering any terms meaningless, the court must
construe the structure and language of the contract to mean that
arbitration was mandatory if requested by either party.  The
court reasoned that "[t]here would be no reason for the
arbitration language . . . if the parties intended it to be
permissive, for the parties could voluntarily have agreed to
submit a dispute to arbitration in the absence of such a
provision."  American Italian, 914 F.2d at 1104.

        Even if the court assumes that Special Provision 109.11
contemplates, as one ADR option, traditional mediation (with no
hearing or third party decision), the provision also clearly
contemplates a hearing and decision by arbitration.  Dobson
"accepted that arbitration was a potential method of dispute
resolution," and its claim that it never agreed to arbitration
lacks merit.  Howard Fields & Associates v. Grand Wailea Co., 848
F.Supp. 890, 896 (D.Hawaii 1993).  If Dobson can simply ignore

the ADR requirements of Special Provision 109.11 and is permitted
to continue pursuing litigation despite Ratliff's contractual
demand for arbitration, Special Provision 109.11 is superfuluous.
Such an interpretation is contrary to the strong federal policy
in favor of arbitration and of ensuring "the enforceability,
according to their terms, of private agreements to arbitrate."
Volt Info., 489 U.S. at 476.  If Special Provision 109.11 is
interpreted to mean that neither arbitration nor mediation can be
required unless both parties agree to do so after the dispute
arises, the clause is meaningless.  As explained in American
Italian, the parties can always agree to engage in either of
these ADR processes, and a pre-dispute clause so stating adds
nothing to the contract.

     When Ratliff demanded arbitration, while Dobson instead
filed suit before participating in or demanding ADR to resolve
the dispute, arbitration became mandatory and enforceable under
the FAA.  See e.g., Stones River Elec., Inc. v. Chevron Energy
Solutions Co., 2007 WL 433083, 3 (W.D. Ky. 2007)(holding
arbitration was required under the FAA where the parties were
required to either agree to submit to non-binding mediation or
file a written arbitration demand, and one party demanded
arbitration); Howard Fields & Associates, 848 F. Supp. 890
(holding that even if the contract did not mandate arbitration,
where one party demanded arbitration under a clause which stated
that parties agreed to "meet promptly to negotiate, mediate, or
arbitrate any claim" arising out of the contract, arbitration
would be compelled under the FAA).

     IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard
G. Kopf, United States District Judge, pursuant to 28 U.S.C. §

636(b), that the motion to compel arbitration filed by the defendant and counter claimant, Ratliff, Inc., (filing no. 33), be granted.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

DATED this 6th day of November, 2008.

BY THE COURT:

s/ David L. Piester

David L. Piester
United States Magistrate Judge

24