IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DOBSON BROTHERS CONSTRUCTION, )
Company, a Nebraska          )
corporation,                 )
                             )
              Plaintiff,     )          4:08CV3103
                             )
         V.                  )
                             )
RATLIFF, Inc., an Oklahoma   )          REPORT, RECOMMENDATION
corporation, and AMERICAN    )              AND ORDER
CONTRACTORS INDEMNITY,       )
Company, a California        )
corporation,                 )
                             )
              Defendants.    )
                             )

INTRODUCTION

The court's previous report and recommendation outlined in detail the core contract dispute between Dobson Brothers Construction Company ("Dobson") and defendant Ratliff, Inc. ("Ratliff"). See filing no. 66. Briefly summarized, Dobson entered into a highway construction contract with the Oklahoma Department of Transportation, (the "prime contract"), and subcontracted with Ratliff to perform water and sanitary sewer line work, (the "Dobson/Ratliff subcontract"). Dobson alleges that Ratliff failed to adequately and timely perform the subcontract. Dobson's amended complaint seeks a damage award against Ratliff for:

    (1)  the work Dobson performed to supplement, correct,
         and/or complete work Ratliff was obligated to perform
         under the subcontract;

    (2)  payments Dobson made to others to correct and/or
         complete Ratliff's work under the subcontract;

(3)   the loss of incentive payments Dobson would have
      received from ODOT but for Ratliff's untimely
      performance of the subcontract; and

(4)   disincentive charges assessed by ODOT against Dobson
      due to Ratliff's delayed performance.

Filing No. 68, at CM/ECF p. 9.


     Dobson's amended complaint alleges Ratliff has failed to pay
Dobson's damage claims, and therefore Ratliff's surety, defendant
American Contractors Indemnity, Company ("ACIC"), must pay
Dobson's claims in accordance with the terms of the performance
and payment bonds issued by ACIC.  Ratliff has counterclaimed for
amounts Dobson allegedly owes to Ratliff for performing the
subcontract.  Filing No. 31.  The court has ordered Dobson and
Ratliff to arbitrate their dispute.  Filing No. 82.


                        SUMMARY OF ARGUMENTS

     ACIC's motion for judgment on the pleadings, (filing no.
42), Dobson's motion to compel ACIC to arbitrate the Dobson/ACIC
dispute, (filing no. 67), and the question of whether the court
should stay or dismiss this federal litigation when compelling
arbitration against any party, have been referred to the
undersigned magistrate judge for a report and recommendation.
See filing no. 82.  The following outlines the parties'
respective positions on these motions and the central points of
their arguments.

     A.   Motion for Partial Judgment on the Pleadings.

     ACIC has moved for only partial judgment on the pleadings.
Filing No. 42.  Specifically, ACIC argues the plaintiff has
failed to state a claim, and cannot recover under the payment

                                2

bond because payment bonds are issued to protect those who
contract with the principal (Ratliff) to supply materials and
labor for performance of the subcontract.  ACIC asserts that
Dobson, the general contractor for the prime contract, is not a
proper claimant for recovery on a payment bond.  Filing No. 43.
ACIC has not moved to dismiss Dobson's claim for recovery under
the performance bond.  Filing No. 42.

In response, Dobson argues it is entitled to recover on both
the performance and payment bonds, and as to the payment bond
specifically, claims a right to recover pursuant to the express
language of the bond or, in the alternative, as a subrogated
party.  Filing No. 51.

B.   <u>Dobson's Motion to Compel ACIC to Arbitrate</u>.

1)   ACIC's alleged pre-dispute consent to arbitrate
     Dobson/ACIC disputes.

Dobson requests an order compelling a consolidated
arbitration of the Dobson/ACIC and Dobson/Ratliff disputes.
Filing No. 68, at CM/ECF pp. 10-11.  In support of its motion to
compel ACIC to arbitrate, Dobson argues:

1)   The arbitration provision of the prime contract
     (Special Provision 109.11), which was incorporated by
     reference into the Dobson/Ratliff subcontract and the
     ACIC-issued payment and performance bonds, obligates
     ACIC to arbitrate Dobson's claims for damage recovery
     under the bonds, (filing no. 68, at CM/ECF pp. 5-8);
     and

3

2)   Dobson's claims against ACIC are within the scope of
the arbitration mandated under Special Provision 109.11
because:  a) the prime contract, the Dobson/Ratliff
subcontract, and the payment and performance bonds are
inextricably intertwined, b) ACIC, as the surety for
Ratliff, stands in the shoes of Ratliff, and c) ACIC's
substantive defenses to Dobson's claims are the same
defenses available to Ratliff, (filing no. 68, at
CM/ECF pp. 8-10).

As an alternative to compelling ACIC to arbitrate, Dobson
requests an order staying the litigation of Dobson's action
against ACIC pending completion of Dobson's arbitration with
Ratliff.  Filing No. 68, at CM/ECF p. 11-12.

In response, ACIC argues that Dobson has no contractual
right to compel ACIC to arbitrate because there is no language
within the prime contract, Dobson/Ratliff subcontract, and the
performance and payment bonds indicating ACIC expressly agreed to
arbitrate bond claims and ACIC's surety defenses.  ACIC claims
the language of the bonds contemplates litigating all claims
against the bonds, and ACIC is entitled to a judicial forum for
resolution of Dobson's action for recovery on the bonds.
However, ACIC's brief further states:

ACIC is will willing to concede that the interests of
judicial economy and avoidance of piecemeal litigation
are best served if all issues contained in ODOT
specification 109.11, (specifically payment disputes
that relate to the allocation of chargeable contract
time and resultant liquidated damages, and any quantity
or quality of work subject to the contract) are proper
subjects for arbitration and **ACIC will agree to be
bound along with its principal to the determination of
the arbitrator with regard to payment disputes.**

4

Filing No. 74, at CM/ECF p. 6 (emphasis in original).

ACIC further argues that Dobson has waived or is estopped from demanding arbitration because the language of the bonds indicates that claims against ACIC will be litigated; in accordance with this language, Dobson filed a lawsuit; Dobson opposed Ratliff's motion to compel arbitration and objected to the report and recommendation stating Ratliff's motion to arbitrate should be granted; and Dobson pursued discovery under the Federal Rules of Civil Procedure.  Filing No. 74, pp. 8-10.

In reply, Dobson argues that if Special Provision 109.11 supports compelled arbitration of the Dobson/Ratliff dispute, it must support compelled arbitration of the Dobson/ACIC dispute. As to ACIC's waiver or estoppel argument, Dobson argues:

--      A legitimate dispute existed over the meaning and
        import of Special Provision 109.11, and the rights or
        obligations of the parties under that dispute were not
        "known" and therefore could not be knowingly
        relinquished or waived prior to a court ruling on
        Ratliff's motion to compel arbitration;

--      Dobson has consistently stated to ACIC that if the
        court ordered arbitration under Special Provision
        109.11, Dobson would seek arbitration against ACIC as
        well, and Dobson is therefore not "seeking to reverse
        course" by moving to compel ACIC to arbitrate; and

--      ACIC cannot claim it was prejudiced by Dobson's use of
        federal court discovery procedures because discovery is
        available in both litigation and arbitration

proceedings, Dobson and ACIC both served written
discovery, and ACIC received more discovery responses
and thereby benefitted more than Dobson from the
exchange of written discovery.

Filing No. 79, at CM/ECF pp. 8-11.

2)   ACIC's post-dispute agreement to be bound by the
     arbitration determination in the Dobson/Ratliff payment
     dispute.

Although ACIC argues there was no pre-dispute agreement to
arbitrate any dispute arising between Dobson and ACIC, it has
stated arbitration of the Dobson/Ratliff payment dispute is
proper, and ACIC is willing to be bound by the arbitrator's
decision on that dispute.  The parties disagree on the meaning
and scope of ACIC's post-dispute agreement "to be bound along
with its principal to the determination of the arbitrator with
regard to payment disputes."  Filing No. 74, at CM/ECF p. 6.

Dobson argues that any ambiguity regarding the scope of a
consent to arbitrate must be interpreted in favor of arbitration.
Dobson therefore claims that based on ACIC's post-dispute
statement in its brief, "all issues, claims, and defenses between
Dobson and ACIC are arbitrable under the circumstances of this
case."  Filing No. 94, at CM/ECF p. 1.  ACIC argues that the
Dobson/Ratliff arbitration proceeding will determine the
existence and amount of the debt owed by Ratliff to Dobson.  ACIC
claims it has agreed to be bound by the arbitrator's liability
decision regarding any amount owed by Ratliff to Dobson, but it
has never agreed to arbitrate whether the payment and performance
bonds can be used by Dobson as a source for payment of any amount
owed by Ratliff.  ACIC states it remains entitled to a court

6

decision concerning whether Dobson can assert a right to recover under the language of the bonds themselves, and if so, whether ACIC has any surety defenses sufficient to bar Dobson's recovery. Filing No. 95, pp. 7-8.

     C.   Dismissal or Stay of Litigation Pending Arbitration.

The parties were ordered to brief the issue of "whether the court should stay or dismiss this federal litigation when compelling arbitration against any party."  Filing No. 84.  In support of its position that the litigation should be stayed during arbitration, Dobson argues:

> A stay is consistent with the express language and purposes of the Federal Arbitration Act ("FAA"), will help to ensure that no future issue arises with regard to a statute of limitations, and will ensure that a pending action is present in this court should issues arise during the arbitration proceedings that require this Court's involvement.

Filing No. 87, at CM/ECF p. 1.

ACIC argues that the litigation should not be dismissed because ACIC did not agree to arbitrate claims on the bond and surety defenses, and therefore only a portion of Dobson's claims are subject to arbitration.  However, ACIC also argues that the litigation should not be stayed.  ACIC claims any arbitration ordered in this case and the litigation of ACIC's liability under the bonds should proceed in tandem because the litigated issues will not overlap those submitted to arbitration, and there is no risk of inconsistent outcomes arising from the litigation and arbitration proceedings.  In the alternative, ACIC states the litigation on the bonds should be stayed pending arbitration. Filing No. 89.

Ratliff argues that if Dobson's claims against ACIC must be arbitrated, all issues will be addressed by the arbitration forum and the federal litigation should be dismissed.  Ratliff asserts, however, that if the court does not order arbitration of the Dobson/ACIC dispute, all of the claims filed in federal court will not be submitted to arbitration and the case cannot be dismissed.  Ratliff argues that if the Dobson/ACIC dispute must be litigated, that litigation should not be stayed.  Filing No. 88; filing no. 90.

### FACTUAL STATEMENT

For the purposes of evaluating the merits of the pending motion for judgment on the pleadings and motion to compel arbitration of the Dobson/ACIC dispute, the court will assume the facts alleged by the plaintiff are true.

The Dobson/Ratliff subcontract states "[t]he Subcontractor agrees to perform the work as described in exhibit "A" [hereinafter referred to as "Subcontract Work") and to provide performance and payment bonds on a form approved by and with a surety acceptable to the contractor.  Filing No. 69-5, (Ex. 1C), at CM/ECF p. 1.  As security for Ratliff's performance of the subcontract, Ratliff obtained performance and payment bonds from ACIC that were executed, delivered, and accepted by Dobson, as obligee.  The penal sum of both the performance bond and the payment bond was $885,003.20.  Filing No. 24, ¶¶ 8, 10.

Dobson alleges that pursuant to the performance bond, ACIC must:

> [I]ndemnify and save harmless Dobson from all loss, liability, costs, damages, penalty, attorneys' fees or expense which Dobson may incur by reason of Ratliff's failure to well and truly keep and perform each, every and all of the terms and conditions of the Subcontract,

> including but not limited to, completion within the
> time specified of all work covered by the Subcontract.

Filing No. 24, ¶ 9.  See also, filing no. 69-3.  Dobson alleges
that pursuant to the payment bond, ACIC must:

> [I]ndemnify and save harmless Dobson, as Obligee, from
> all loss, liability, costs, damages, penalty,
> attorneys' fees and expenses incurred by Dobson in
> connection with Ratliff's work[, and] pay promptly and
> in full the claims of all persons, firms, or
> corporations, performing labor or furnishing equipment,
> materials or supplies incurred in connection with
> Ratliff's work.

Filing No. 24, ¶ 11.  See also, filing no. 69-4.  As to both the
performance and payment bond, the Dobson/Ratliff subcontract was
attached and "made a part" of the bond, and the prime contract
"and the specifications and general conditions thereof [were]
incorporated . . . and shall be deemed part" of the bond.
Filing no. 69-3, (Ex. 1A:  Subcontract Performance Bond); Filing
No. 69-4, (Ex. 1B:  Subcontract Payment Bond).

On October 22, 2007, and December 12, 2007, Dobson notified
ACIC that Ratliff was failing to perform its obligations under
the subcontract.  Filing No. 24, ¶¶ 16-17.  Dobson provided ACIC
with documents supporting Dobson's claim that additional costs
and back charges were being incurred due to Ratliff's improper
and untimely performance.  Filing No. 24, ¶ 17.  On December 27,
2007, Dobson informed ACIC that Ratliff was not timely paying its
labor and material bills, was several months behind schedule, and
was delaying the completion the prime contract.  On February 15,
2008, Dobson gave written notice to Ratliff and ACIC that Ratliff
was in default on the subcontract, and Ratliff and ACIC must cure
this default within five working days to avoid termination of the
subcontract.  Filing No. 24, ¶ 20.  Ratliff and ACIC did not cure
the default, and on February 27, 2007, they were notified by

9

Dobson that the subcontract was terminated.  Filing No. 24, ¶ 21. Dobson alleges that it incurred expenses for labor, equipment, and materials to complete the subcontract work, and instead of receiving the incentive payments it would have earned for completing the contract early, it was assessed disincentive charges for completing the prime contract late due to Ratliff's breach of the subcontract.

Under the terms of the Dobson/Ratliff subcontract, costs and expenses incurred to cure Ratliff's alleged default, along with any delay costs, liquidated damages or other damages provided for in the subcontract, "may be collected from the Subcontractor, from the surety, or both the Subcontractor and the surety." Filing No. 69-5, (Ex. 1C), ¶ 6.2(4) at CM/ECF p. 3.  Dobson alleges that it paid Ratliff's subcontractors and/or suppliers, and spent money on labor and supplies to replace and supplement Ratliff's work.  Dobson claims these costs should have been paid by Ratliff, or by ACIC upon Ratliff's failure to pay.  Ratliff has not paid these amounts, and although Dobson performed the conditions precedent for recovery under the payment and performance bonds, ACIC has refused to pay Dobson as required under the bonds.  Filing No. 24, ¶¶ 30-35.

Pursuant to the language of the payment bond, "[n]o suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located . . . ."  Filing No. 69-4.  Pursuant to language within the performance bond, "[a]ny proceeding, legal or equitable, under this bond may be instituted in any Court of competent jurisdiction in the location

10

in which the work or part of the work is located."  Filing No.
69-3.[1]

Special Provision 109.11 of the prime contract, which was
incorporated into and "made a part of" the Dobson/Ratliff
subcontract, (see filing no. 69-5, (Ex. 1C), at CM/ECF p. 1), and
the ACIC-issued payment and performance bonds states:

> Payment disputes between the Contractor and
> subcontractors relating to allocation of chargeable
> contract time and any resultant liquidated damages,
> quantity or quality of items of work subject to a
> subcontract or other agreement shall be referred to a
> neutral alternative dispute resolution forum for
> hearing and decision with the costs for such mediation
> or arbitration to be shared equally by the parties.

Filing No. 69-6, (Ex. 1D), at CM/ECF p. 2.

The parties have not cited, and the court has not found, any
language within the prime contract, the Dobson/Ratliff
subcontract, or the performance and payment bonds stating that
disputes between Dobson and Ratliff's surety must be submitted to
a "neutral alternative dispute resolution forum for hearing and
decision," to arbitration, or to mediation as a prerequisite to
filing suit.  However, ACIC's brief states:

> ACIC is will willing to concede that the interests of
> judicial economy and avoidance of piecemeal litigation

---

[1]The location of the work to be performed under the prime
contract and Dobson/Ratliff subcontract is in Oklahoma.  However,
section 9.2 of the subcontract, which was incorporated by
reference into the bond, states "Subcontractor consents to the
jurisdiction of the District Court of Lancaster County, Nebraska
or the United States District Court for the District
of Nebraska."  Filing No. 69-5, (Ex. 1C), § 9.2, at CM/ECF p. 4.

> are best served if all issues contained in ODOT
> specification 109.11, (specifically payment disputes
> that relate to the allocation of chargeable contract
> time and resultant liquidated damages, and any quantity
> or quality of work subject to the contract) are proper
> subjects for arbitration and ACIC will agree to be
> bound along with its principal to the determination of
> the arbitrator with regard to payment disputes.

Filing No. 74, at CM/ECF p. 6.  However, ACIC does not consent,
and claims it cannot be ordered, to arbitrate Dobson's bond
claims and surety defenses which are not within the limited scope
of ODOT specification 109.11.  Filing No. 74, at CM/ECF p. 6.


                          DISCUSSION


     Although the issues raised by the pending motions are
interdependent, the threshold issue is whether the court should
grant Dobson's motion to compel arbitration of the Dobson/ACIC
dispute.  If the court orders ACIC to arbitrate, the scope of
that arbitration may include deciding whether Dobson is a proper
claimant under the payment bond--the question raised by ACIC's
motion for partial judgment on the pleadings.  The court can
decide whether all or part of the Dobson/ACIC dispute is subject
to arbitration without deciding whether Dobson can make a claim
under the payment bond.  Accordingly, the court cannot properly
rule on ACIC's motion for judgment on the pleadings if the
central issue raised in that motion is submitted to arbitration.
AT & T Technologies, Inc. v. Communications Workers of America,
475 U.S. 643, 650 (1986)("[T]he courts . . . have no business
weighing the merits" of an issue submitted to arbitration).


     Moreover, deciding if and to what extent the Dobson/ACIC
dispute must be arbitrated may dictate whether this case should
be stayed pending arbitration or dismissed.  If all issues raised

in Dobson's amended complaint are subject to arbitration, the
lawsuit may be dismissed. Kalinski v. Robert W. Baird & Co.,
Inc., 184 F. Supp. 2d 944, 946 (D. Neb. 2002)(Kopf, J.,
presiding)(holding the court has discretion to dismiss a case if
all the plaintiff's claims are subject to arbitration).  If
arbitration of the Dobson/ACIC dispute is not compelled, or if
only a portion of the Dobson/ACIC issues are submitted to
arbitration, the court may either stay the matters that remain
pending in court or proceed with determining the merits of the
Dobson/ACIC claims and defenses not submitted to arbitration.
Webb v. R. Rowland & Co., Inc., 800 F.2d 803, 808 (8th Cir.
1986)(holding the district court has the inherent power to stay a
lawsuit pending the outcome of a parallel arbitration proceeding
in order to control its docket, conserve judicial resources, and
provide for a just determination of the case).

     Accordingly, the initial question addressed in this report
and recommendation is whether, and to what extent, the court
should grant Dobson's motion to compel arbitration of its claims
against ACIC.

     A.   Arbitration of the Dobson/ACIC Dispute.

     Arbitrators have no authority to resolve disputes unless the
parties have agreed in advance to submit such grievances to
arbitration.  AT & T Technologies, 475 U.S. at 648.  As applied
to the Dobson/ACIC dispute, Dobson argues the entire dispute is
subject to arbitration based on the parties' pre-dispute
agreement to arbitrate.  ACIC argues that none of the Dobson/ACIC
dispute is subject to a pre-dispute arbitration agreement, and
ACIC's post-dispute consent to arbitrate does not include bond

claims or surety defenses, but extends to only those claims described in Special Provision 109.11.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." AT & T Technologies, 475 U.S. at 648. Unless the parties have agreed to submit the arbitrability question itself to arbitration, (First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995)), the court must first decide whether a valid agreement to arbitrate exists.  If so, the court must then determine if the parties' dispute falls within the scope of the arbitration agreement.  AT & T Technologies, 475 U.S. at 649; Lipton-U.City, LLC v. Shurgard Storage Centers, Inc., 454 F.3d 934, 937 (8th Cir. 2006); Teamsters Local Union No. 688 v. Industrial Wire Products, Inc., 186 F.3d 878, 881 (8th Cir. 1999).  "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes--but only those disputes--that the parties have agreed to submit to arbitration." First Options, 514 U.S. at 943 (1995).

Except to the extent state law treats arbitration agreements differently from other contracts, ordinary state-law principles govern the determination of whether an arbitration contract was formed.  First Options, 514 U.S. at 944.  However, once the court determines that an arbitration agreement exists, the Federal Arbitration Act, as a matter of federal law, requires that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration.  Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983); Teamsters Local Union No. 688, 186 F.3d at 881)("[A]rbitration is a matter of contract and may not be ordered unless the parties agreed to submit the dispute to arbitration. . . . [W]hen an arbitration clause exists

14

in a contract, there is a presumption of arbitrability unless it is clear that the arbitration clause is not susceptible of an interpretation that covers the dispute."). Specifically, the presumption of arbitrability applies to the scope of an arbitration agreement, but not to the existence of such an agreement.

> Unlike the general presumption that a particular issue is arbitrable when the existence of an arbitration agreement is not in dispute, see <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), when the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away. See, <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944-45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

<u>Riley Mfg. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998)</u>.

    1)    The Existence of a Pre-dispute Arbitration Agreement.

ACIC claims the prime contract, Dobson/Ratliff subcontract, and ACIC-issued payment and performance bonds, read separately or in conjunction, contain no agreement to arbitrate disputes that may arise between Dobson and ACIC. Dobson argues that, when read in conjunction, an arbitration agreement exists. The court need not decide whether Nebraska or Oklahoma law governs this issue because the governing principles of contract formation under either state's law is the same. "A cardinal principle of construction of written instruments is that an interpretation shall be made which will reflect the true intention of the parties." <u>U. P. Terminal Federal Credit Union v. Employers Mut. Liability Ins. Co. of Wis., 172 Neb. 190, 194, 109 N.W.2d 115, 118 (1961)</u>; <u>Sunrizon Homes, Inc. v. Am. Guar. Inv. Corp., 782</u>

P.2d 103, 107 (Okla.1988)("The cardinal rule in contract
interpretation is to determine and to give effect to the
contractual intent of the parties."). "A contract must be
construed as a whole and, if possible, effect must be given to
every part thereof." Crowley v. McCoy, 234 Neb. 88, 91, 449
N.W.2d 221, 224 (1989); Pitco Production Co. v. Chaparral Energy,
Inc., 63 P.3d 541, 546 (Okla. 2003)("A contract must be
considered as a whole so as to give effect to all its
provisions."). When a contract incorporates another contract by
direct reference or by necessary implication, the two instruments
are interpreted as a single contract. McCord & Burns Law Firm
LLP v. Piuze, 276 Neb. 163, 171, 752 N.W.2d 580, 586 (2008);
Nowak v. Burke Energy Corp., 227 Neb. 463, 468, 418 N.W.2d 236,
240 (1988); Fireman's Fund Ins. Co. v. Overton, 491 P.2d 278, 281
(Okla. 1971)(citing Continental Supply Co. v. Levy, 121 Okl. 132,
247 P. 967 (1926)("[W]here a contract refers to and makes the
conditions of another instrument . . . a part of it, the two will
be construed together as the agreement of the parties."). See
also, 15 Okl.St.Ann. § 158 ("Several contracts relating to the
same matters, between the same parties, and made as parts of
substantially one transaction, are to be taken together.").

"If a contract is complete in itself, and when viewed as a
totality, is unambiguous, its language is the only legitimate
evidence of what the parties intended." Pitco Production, 63
P.3d at 546; Metropolitan Life Ins. Co. v. Beaty,  242 Neb. 169,
172-173, 493 N.W.2d 627, 630 (1993)("If the contents of a
document are unambiguous, . . . the intention of the parties must
be determined from the contents of the document."). "The fact
that parties to a document have or suggest opposing
interpretations of the document does not necessarily, or by
itself, compel the conclusion that the document is ambiguous."

*Boutilier v. Lincoln Benefit Life Ins. Co.*, 268 Neb. 233, 238, 681 N.W.2d 746, 750 (2004); *Pitco Production*, 63 P.3d at 545-46 ("The mere fact the parties disagree or press for a different construction does not make an agreement ambiguous.").

The payment and performance bonds issued by ACIC incorporate the prime contract and subcontract by reference. Therefore, to determine whether ACIC and Dobson agreed to arbitrate any potential future disputes, the court must collectively consider these documents as evidencing the contract between ACIC and Dobson and interpret them as a whole. As with any contract dispute, the court must first look to the express terms of the Dobson/ACIC contract to determine if an arbitration agreement exists. *Pro Tech Industries, Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).

Relying heavily on this court's prior report and recommendation regarding arbitration of the Dobson/Ratliff dispute, Dobson claims Special Provision 109.11 of the prime contract evidences ACIC's agreement to arbitrate disputes between Dobson and ACIC. Special Provision 109.11 states that payment disputes "between the *Contractor* and *subcontractors*" must be referred to "a neutral alternative dispute resolution forum for hearing and decision." Filing No. 69-6, (Ex. 1D), at CM/ECF p. 2 (emphasis added). As set forth in the court's ruling on Ratliff's motion to compel arbitration, Special Provision 109.11 means the "contractor" (Dobson) must arbitrate any claims with its "subcontractors" (including Ratliff) over the payment disputes described in Special Provision 109.11.

Unlike Ratliff, ACIC is not a subcontractor. ACIC issued payment and performance bonds for Ratliff, as principal, in favor

17

of Dobson, as obligee.  There is no language in the prime
contract (including Special 109.11), the Ratliff/Dobson
subcontract, or the ACIC-issued payment and performance bonds
stating disputes between the contractor and the subcontractors'
sureties must be arbitrated.  The express language of the
Dobson/ACIC contract does not include an arbitration agreement
between Dobson and ACIC.

Some courts have held that even in the absence of express
language stating the surety agrees to arbitration, a surety has
agreed to arbitrate claims against the bond when the language of
the bond incorporates by reference a bonded contract containing
an arbitration clause.  See, Arbitration Agreement's Effect on
Nonsignatories:  General Principles- Sureties as Nonsignatories,
6 Bruner & O'Connor Construction Law § 20:71.  The Eighth
Circuit, under facts analogous to those presented on Dobson's
motion to compel, has expressly disagreed.  AgGrow Oils, L.L.C.
v. National Union Fire Ins. Co. of Pittsburgh, PA, 242 F.3d 777,
782 (8th Cir. 2001)(applying North Dakota law).[2]

---

[2]As applied to the facts presented, North Dakota, Nebraska
and Oklahoma apply essentially the same principles in determining
the meaning and application of a contract.

> Contracts are construed to give effect to the mutual
> intention of the parties at the time of contracting.
> The parties' intention must be ascertained from the
> writing alone if possible.  A contract must be
> construed as a whole to give effect to each provision,
> if reasonably practicable.  We construe contracts to be
> definite and capable of being carried into effect,
> unless doing so violates the intention of the parties.
> Unless used by the parties in a technical sense, words
> in a contract are construed in their ordinary and
> popular sense, rather than according to their strict
> legal meaning.
>
> If a written contract is unambiguous, extrinsic

In AgGrow Oils, AgGrow entered into a construction contract with TEI, and National issued a bond as surety for TEI's performance.  The performance bond incorporated the AgGrow/TEI construction contract by reference.  The construction contract stated that "[a]ny controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration . . . ," (AgGrow Oils, 242 F.3d at 780, n.1), while the performance bond itself stated "[a]ny proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located . . . ." AgGrow Oils, 242 F.3d at 780).  After TEI failed to meet its performance guarantees, AgGrow filed suit against National on the bond.  National moved to stay, claiming AgGrow was required to arbitrate its bond claim in accordance with the construction contract which was incorporated by reference into the bond.

The district court disagreed, holding "the bond is not arbitrable because 'the bond literally incorporates only AgGrow's promise to arbitrate with TEI; it does not . . . encompass mandatory arbitration with National." AgGrow Oils, 242 F.3d at 780.  Acknowledging that other courts had reached a contrary decision, the Eighth Circuit affirmed the district court finding.  The Eighth Circuit reasoned that construing an incorporation

---

evidence is not admissible to contradict the written language.  However, if a written contract is ambiguous, extrinsic evidence may be considered to show the parties' intent.  Whether or not a contract is ambiguous is a question of law.  An ambiguity exists when rational arguments can be made in support of contrary positions as to the meaning of the language in question.

Kuperus v. Willson, 709 N.W.2d 726, 731 (N.D. 2006)

clause as an express agreement to arbitrate could have significant consequences, specifically noting such a holding would "permit the obligee to compel an unwilling surety to arbitrate its unique defenses, such as whether the obligee had impaired the surety's position or released the principal obligor." AgGrow Oils, 242 F.3d at 782.  The Eighth Circuit held:

> [W]e are unwilling to construe an incorporation clause whose obvious purpose was to clarify the extent of the surety's secondary obligation as also reflecting a mutual intent to compel arbitration of all disputes between the surety and the obligee under the bond. Like the district court, we conclude there was no such agreement to arbitrate.

AgGrow Oils, 242 F.3d at 782.

The arbitration issue raised by Dobson's motion to compel is legally and factually indistinguishable from the issue raised in AgGrow Oils.  Although Dobson argues that ACIC must be compelled to arbitrate Dobson's bond claims, such an order would permit "[Dobson] to compel an unwilling surety [ACIC] to arbitrate its unique defenses, such as whether [Dobson] had impaired [ACIC's] position or released [Ratliff]," one of the far-reaching consequences specifically anticipated and noted by AgGrow Oils as supporting denial of arbitration.

For the reasons set forth in AgGrow, and in accordance with its holding, Dobson's motion to compel arbitration of ACIC's obligation to pay Dobson for amounts Ratliff may owe based on ACIC's alleged pre-dispute agreement to arbitrate should be denied.

2)      The Scope of ACIC's Post-Dispute Agreement to Be Bound
        by the Arbitrator's Decision on the Dobson/Ratliff
        Payment Dispute.


ACIC's brief opposing Dobson's motion to arbitrate included
the following statement:

> ACIC is will willing to concede that the interests of
> judicial economy and avoidance of piecemeal litigation
> are best served if all issues contained in ODOT
> specification 109.11, (specifically payment disputes
> that relate to the allocation of chargeable contract
> time and resultant liquidated damages, and any quantity
> or quality of work subject to the contract) are proper
> subjects for arbitration and ACIC will agree to be
> bound along with its principal to the determination of
> the arbitrator with regard to payment disputes.

Filing No. 74, at CM/ECF p. 6.  Dobson argues that even if no
pre-dispute agreement to arbitrate existed, ACIC's post-dispute
statement, as set forth above, is an agreement to arbitrate all
issues raised by the parties' pleadings.  ACIC disagrees, stating
the foregoing is an agreement to be bound by the arbitrator's
decision concerning whether Ratliff owes Dobson money, but not an
agreement that Dobson can, without a judicial determination,
recover under the ACIC-issued payment and performance bonds for
payment of Ratliff's debt.


Resolving this conflict requires analyzing the language of
Special Provision 109.11 in the context of the legal principles
governing a suretyship relationship.  Although Dobson asserts
that when determining the scope of any arbitration agreement, any
ambiguity must be resolved in favor of compelling arbitration,
(filing no. 94, at CM/ECF p. 3 (citing ITT Hartford Life &
Annuity Ins. Co., v. Amerishare Investors, Inc., 133 F.3d 664,
668 (8th Cir. 1998); Int'l Ass'n of Machinists and Aerospace

21

Workers v. Republic Airlines, Inc., 829 F.2d 658, 660 (8th Cir. 1987)(quoting AT&T Techs., Inc. v. Commc'n Workers of Am., 475 U.S. 643 (1986)); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)), ACIC's statement agreeing to be bound by the arbitration decision of the Dobson/Ratliff dispute is not ambiguous.  Dobson claims that "ACIC's language is nearly the same language as that contained in Special Provision 109.11 of the Prime Contract between Dobson and the Oklahoma Department of Transportation," (filing no. 94, at CM/ECF p. 3), and therefore ACIC is likewise required to arbitrate.  However, Dobson's argument overlooks the specificity of Special Provision 109.11.  That provision requires arbitration of only those disputes between a contractor and a subcontractor; sureties are not mentioned.

Dobson argues that even if Special Provision 109.11 is limited to contractor/subcontractor disputes, ACIC's post-dispute statement must be construed as an agreement to arbitrate all of Dobson's claims because ACIC stands in the shoes of Ratliff, and any defenses ACIC may raise to liability will be raised and determined in the arbitration of the Dobson/Ratliff dispute.  In essence, Dobson argues that ACIC and Ratliff are, for the purposes of this litigation, the same entity and any determination against Ratliff is binding against ACIC.  This argument misconstrues the suretyship relationship.

A surety bond is not an insurance policy.  Pearlman v. Reliance Ins. Co., 371 U.S. 132, 140 n. 19 (1962).  An insurance policy creates a two-party relationship between the insurer and the insured wherein the obligation or debt of the insured is "covered" by the insurer, with the terms and extent of that coverage dictated by the insurer.  In contrast, there are three

22

parties in a suretyship arrangement:  (1) the person to whom the
debt is owed (the "obligee"); (2) the person primarily
responsible for satisfying the debt (the "principal"); and (3)
the one who contractually agrees to answer for the principal's
obligation if the principal does not perform (the "surety").  4
Bruner & O'Connor Construction Law § 12:9.  Bonds are contracts,
and suretyship status is created through a tripartite agreement
"whereby one party (the surety) becomes liable for the
principal's or obligor's debt or duty to the third party
obligee."  Pennsylvania Nat. Mut. Cas. Ins. Co. v. City of Pine
Bluff, 354 F.3d 945, 954 (8th Cir. 2004).  This tripartite
agreement consists of not only the primary obligation
(subcontract) between the obligee (Dobson) and the principal
obligor (Ratliff), but the secondary obligation between the
obligee and the secondary obligor (ACIC).  The "duties of the
secondary obligor to the obligee are determined by the contract
creating the secondary obligation, subject to defenses resulting
from suretyship status."  Restatement (Third) of Suretyship &
Guaranty § 32 (1996).

     Generally speaking, a surety is not liable to the obligee
unless the principal is liable on the principal obligation; in
this case, the subcontract.  With some exceptions,[3] a surety may
therefore plead any defenses available to the principal, and a

---

[3]Contrary to ACIC's argument, in an action brought by an
obligee against a principal and its surety, the surety may not be
allowed to raise every defense a principal may raise on the
underlying claim.  For example, most courts hold that a surety
cannot plead the running of the statute of limitations against
the principal obligor, or the principal's personal defenses such
as infancy, insanity, ultra vires, or bankruptcy discharge.  23
Williston on Contracts § 61:7 (4th ed.); Restatement (Third) of
Suretyship & Guaranty § 34 (1996).  These defenses are not
currently raised in Ratliff's answer to Dobson's complaint.

judgment against the obligee in favor of a principal bars the obligee from recovering against the surety. In re Modern Textile, Inc., 900 F.2d 1184, 1188 (8th Cir. 1990); Restatement (Third) of Suretyship & Guaranty § 67(1)(1996). However, absent some agreement to the contrary, if an obligee obtains a ruling on the merits against the principal, this ruling creates only "a rebuttable presumption of the principal obligor's liability to the obligee in a subsequent action of the obligee against the secondary obligor to enforce the secondary obligation." Restatement (Third) of Suretyship & Guaranty § 67(2)(1996).

The language of ACIC's post-dispute consent to be bound by the outcome of the Dobson/Ratliff arbitration, interpreted in the context of suretyship law, defines the scope of ACIC's post-dispute agreement. If the arbitrator finds in favor of Ratliff on the Ratliff/Dobson payment dispute, Dobson cannot seek recovery from ACIC. However, by agreeing to be "bound along with [Ratliff] to the determination of the arbitrator with regard to payment disputes," ACIC has also agreed to forego its right to rebut the presumption that Ratliff is liable to Dobson through litigation. In other words, interpreted broadly, ACIC has agreed to arbitrate the principal obligation between Dobson and Ratliff, including its right to rely on any defenses Ratliff raised or could have raised on that obligation.

ACIC has made no post-dispute statement indicating it agrees to forego its right to challenge Dobson's claim for recovery on the secondary obligation; that is, the payment and performance bonds. While Dobson is correct that the bond incorporated the prime contract and Dobson/Ratliff subcontract, and thus these contracts are "intertwined," that interconnection does not alter the fact that separate duties and rights exist, and separate

defenses may be raised as between Dobson and ACIC on the
secondary obligation.  For example, Ratliff alleges Dobson
modified or expanded the scope of Ratliff's subcontract work.
Filing No. 31, ¶ 7.  If the underlying agreement between Ratliff
and Dobson was modified, and Ratliff agreed to these
modifications, Ratliff may nonetheless owe Dobson (or Dobson may
owe Ratliff) on their payment dispute, the amount of such
liability to be determined by the arbitrator.  However, if the
alleged modification was made without ACIC's consent, ACIC may
challenge whether and to what extent Dobson can recover under the
terms of the bond.  "[T]he surety bond embodies the principle
that any material change in the bonded contract, that increases
the surety's risk or obligation without the surety's consent,
affects the surety relationship."  Pennsylvania Nat. Mut. Cas.
Ins. Co. v. City of Pine Bluff, 354 F.3d 945, 953 (8th Cir.
2004).  See also, Restatement (Third) of Suretyship & Guaranty §
41 (1996).

    Moreover, a surety can raise defenses unavailable to the
principal obligor, such as whether the obligee acted in a manner
that increased the secondary obligor's risk of loss or released
the principal obligor, (AgGrow Oils, 242 F.3d at 782; Restatement
(Third) of Suretyship & Guaranty § 37-41 (1996)), or failed to
comply with conditions precedent set forth in the bond itself,
such as notice requirements.

    To summarize, ACIC has provided a post-dispute consent to
arbitrate, but even interpreted broadly with all ambiguities read
in favor of arbitration, that consent extends only to the payment
dispute between Dobson and Ratliff, including any defenses
Ratliff (or ACIC standing in Ratliff's shoes) raised or could
have raised in the arbitration forum.  ACIC has not consented to

arbitration of Dobson's claim on the bond itself or any surety defenses to recovery on the bond.  The court notes that should Ratliff successfully raise personal defenses to liability in the arbitration proceedings, (see footnote 3), any arbitration opinion should so state as ACIC may not be entitled to raise these defenses to the principal obligation.  Moreover, the arbitration opinion should thoroughly explain the basis for any award so that the court, in ruling on whether and to what extent ACIC may be liable on the bond, can also determine the extent to which the Dobson/Ratliff arbitration award was contemplated and secured under the terms of the ACIC-issued payment and performance bonds.

    B.   <u>Dismissal or stay</u>.

The determination of the payment dispute between Dobson and Ratliff must be arbitrated, but Dobson's claim against ACIC on the bond itself should not be submitted to arbitration. Dismissal is not appropriate unless the entirety of the claims raised by the pleadings are submitted to arbitration.  Under such circumstances, the court may either stay or proceed with litigation of those claims that remain for court resolution. Webb, 800 F.2d at 808.

The arbitration proceedings will determine if anything remains to be litigated.  In the absence of any personal defenses raised by Ratliff, if Dobson does not obtain an award against Ratliff, Dobson cannot recover against ACIC.  In addition, under the allegations raised, the arbitrator may need to decide the extent to which the work performed (or not performed) by Ratliff was within the scope of or exceeded the bonded contract. Although Ratliff and ACIC argue to the contrary, under such

circumstances, Dobson' claim against ACIC should be stayed.  The
arbitrator's decision may serve to eliminate or curtail the scope
of the Dobson/ACIC dispute.  To further the interests of
conserving judicial resources and obtaining a just determination
of the case, the court should stay the litigation of Dobson's
claims against ACIC pending the outcome of the parallel
Dobson/Ratliff arbitration.

  C. <u>ACIC's Motion for Judgment on the Pleadings</u>.

  ACIC's motion for judgment on the pleadings, (filing no.
42), asserts Dobson is not a proper claimant and therefore cannot
recover on the payment bond.  This issue is a dispute on the
secondary obligation, the bond, and has no bearing on the payment
dispute between Dobson and Ratliff.  The issues raised by the
motion are therefore not subject to arbitration because they are
not within the scope of ACIC's consent to arbitrate.  Resolution
of ACIC's motion for judgment on the pleadings should, along with
Dobson's claims against ACIC on the bonds, be stayed pending the
outcome of arbitration.

  IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard
G. Kopf, United States District Judge, pursuant to 28 U.S.C. §
636(b), that:

  1) The motion to compel arbitration filed by plaintiff
    Dobson Brothers Construction Company ("Dobson") against
    defendant American Contractors Indemnity Company,
    ("ACIC")(filing no. 67), be granted in part, and denied
    in part as follows:

    a) Pursuant to the post-dispute consent provided by
      defendant ACIC, ACIC should be bound along with
      Ratliff to the arbitrator's determination of the
      amounts owed, if any, by Ratliff to Dobson on the

principal obligation.  It is further recommended
that the arbitrator be instructed to issue an
opinion that states whether Ratliff raised
personal defenses to liability in the arbitration
proceedings and the extent to which those defenses
impacted any amount awarded to Dobson, and that
the opinion thoroughly explain the factual and
legal basis for any amount awarded to Dobson.

    b)   In all other respects, it is recommended that
         Dobson's motion to compel ACIC to arbitrate should
         be denied.

2)   As to whether the claims remaining pending in this
     court should be dismissed, stayed, or litigated pending
     arbitration, it is recommended that Dobson's claims
     against ACIC, and ACIC's motion for partial judgment on
     the pleadings, (filing no. 42), be stayed pending the
     arbitration of the Dobson/Ratliff payment dispute.

The parties are notified that failing to file an objection
to this recommendation on or before March 10, 2009 may be held to
be a waiver of any right to appeal the court's adoption of the
recommendation.

    IT IS ORDERED:

    1)   Objections to this report and recommendation, along
         with supporting briefs, must be filed on or before
         March 10, 2009.

    2)   Any response to any objection must be filed on or
         before March 20, 2009.

    3)   Reply briefs shall not be filed absent leave of the
         court for good cause shown.

DATED this 27th day of February, 2009.

                              BY THE COURT:

                              s/ David L. Piester
                              David L. Piester
                              United States Magistrate Judge